IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| WILLIAM TIERNO, | ) |
| | ) 1:22-CV-00213-RAL |
| Plaintiff | ) |
| | ) |
| vs. | ) RICHARD A. LANZILLO |
| | ) Chief United States Magistrate Judge |
| | ) |
| DEREK OBERLANDER, E. | ) MEMORANDUM OPINION ON |
| MANGELUZZO, M. BLICHA, I. | ) DEFENDANTS' MOTION FOR SUMMARY |
| GUSTAFSON, C/O SLOAN, C/O SISBLE, | ) JUDGMENT |
| C/O HETRICK, C/O WADE, UNIT | ) |
| MANAGER PERRY, AND ALL | ) ECF NO. 45 |
| JOHN/JANE DOE(S), | ) |
| | ) |
| Defendants | ) |

MEMORANDUM OPINION

I.     **Introduction and Procedural History**

Plaintiff William Tierno, an inmate currently incarcerated at the State Correctional Institution ("SCI") at Pine Grove, initiated this *pro se* civil rights lawsuit against nine identified prison officials and staff members at SCI Forest, where he was previously incarcerated, and an unspecified number of John/Jane Doe Defendants who worked in the "Protective Custody Unit" at that correctional institution. ECF No. 11, ¶ 13. The Complaint alleges that during Tierno's incarceration at SCI Forest, certain Defendants called him a "snitch" in front of other inmates and thereby placed him at an increased risk of harm. *See id.* The Complaint asserts (1) a First Amendment claim for retaliation based on Tierno's having filed grievances and lawsuits against personnel at SCI Camp Hill, (2) Eighth Amendment claims based on certain Defendants having labeled Tierno a snitch and other Defendants having failed to discipline those Defendants or take other corrective action, and (3) a Fourteenth Amendment claim based on certain Defendants having placed Tierno in the Restrictive Housing Unit without a "fair hearing." *Id.*, ¶¶ 41-45.

The Court granted Defendants' unopposed motion to dismiss certain claims against specified Defendants.[1]  The following claims remain: a First Amendment retaliation claim and two Eighth Amendment claims against SCI Forest Superintendent Oberlander and Corrections Officers Wade, Sisble, Sloan, Hetrick, Perry, and the Jane/John Doe Defendants.  *See* ECF Nos. 17, 25, 27.  Tierno seeks declaratory and injunctive relief as well as punitive damages against the Defendants in their individual capacities.

Defendants have moved for summary judgment on all remaining claims pursuant to Fed. R. Civ. P. 56 based on the affirmative defense that Tierno failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).  ECF No. 45.  Pursuant to Local Rule 56(B), Defendants have also filed a brief in support of their motion (ECF No. 46), a concise statement of material facts (ECF No. 48), and an appendix of exhibits (ECF Nos. 46-1 to 46-10).[2]  In response, Tierno filed a brief in opposition to the motion (ECF No. 55), a responsive concise statement of material facts (ECF No. 54), and two exhibits (ECF No. 54-1, 54-2), pursuant to LCvR 56(C).[3]  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.  All parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this action as authorized by 28 U.S.C. § 636.  The matter is ripe for disposition.

---

[1] The Court dismissed all claims against the Defendants in their official capacities, the Fourteenth Amendment due process claim, and all claims against Defendants Mangeluzzo, Blicha, and Gustafson. ECF No. 27.  The Court also struck Tierno's request for compensatory relief.  *Id*.

[2] Defendants' exhibits are: Exhaustion Declaration (ECF No. 46-2), 801 Inmate Discipline Policy (ECF No. 46-3), Administrative Custody Procedures (ECF No. 46-4), 804 Inmate Grievance System Policy (ECF No. 46-5), Grievance Listing (ECF No. 46-6), Grievance Number 950477 (ECF No. 46-7), Tierno v. Shaup Memorandum Dismissing Case (ECF No. 46-8), Plaintiff's Requested Slip to Defendant Oberlander (ECF No. 46-9), and 2021 SCI Forest Protective Custody Unit (PCU) Inmate Handbook 072621 (ECF No. 46-10).

[3] Tierno's exhibits are a declaration of Scott Downey and two of his own declarations.  ECF No. 54-2.  His Complaint also attaches numerous exhibits that he and Defendants cite in their submissions.  *See* ECF No. 11.

## II.      Standard of Review

Federal Rule of Civil Procedure 56(a) directs the district court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings.  Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

On a motion for summary judgment, "a pro se plaintiff is not relieved of his obligation under [Federal Rule of Civil Procedure] 56 to point to competent evidence in the record that is capable of refuting a defendant's motion ..." *Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (citation omitted). Put another way, *pro se* status does not relieve a non-moving party of his "obligation under Rule 56(c) to produce evidence that raises a genuine issue of material fact." *Id*. (quoting *Boykins v. Lucent Techs., Inc.*, 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000)); *see also Winfield v. Mazurkiewicz*, 2012 WL 4343176, at *1 (W.D. Pa. Sept. 21, 2012).

### III.   Material Facts

The DOC transferred Tierno from SCI Camp Hill to SCI Forest on June 28, 2021. ECF No. 48, ¶ 5. Prison records memorialize that, on August 26, 2021, Tierno was placed on administrative custody status because he informed prison officials and medical staff that he felt depressed and had suicidal ideations. *See* ECF No. 11-1 p.1 ("Other Report" No. D561132) (citing "DC-ADM 802 Section 1.A.1.c: Inmate is a danger to himself or others"). The next day, the Program Review Committee ("PRC") met with Tierno to review the Other Report. ECF No. 11-1, p. 2  The PRC memorialized that Tierno stated "he is very depressed and doesn't know if he can go back to the PCU [Personal Care Unit]." ECF No. 11-1, p. 2. The PRC again reviewed Tierno's administrative custody status on September 9, 2021. *See* ECF No. 11-2. The PRC recorded that "Inmate Tierno stated that he is stable and is ready to go back to the PCU but would like a temp Z code [single cell] until he finds a cellie. PRC informed Mr. Tierno that he will be released to GP [General Population]-PCU and approves 3 weeks to find a cellie." *Id.*

On September 23, 2021, Tierno was again placed on administrative custody status in accordance with Perry's Other Report No. D039872, which stated:

> On 9/23/2021 I/M Tierno was placed on Administrative Custody
> status pursuant to Administrative Directive 802, Section 1.A.1.g.

4

> Inmate has requested and been granted self confinement. I/M Tierno told this Unit Manager that he wants self confinement because he does not feel safe in the PCU. He states that the I/Ms have [illegible] him a Rat.

ECF No. 11-3.

On September 30, 2021, Tierno met with the PRC for purposes of an administrative review of Other Report No. D039872 pursuant to DC-ADM 802. *See* ECF No. 11-4, p. 1. The PRC noted that "Tierno has requested and has been granted self-confinement." *Id*. The PRC decided that Tierno "w[ould] be continued in AC status pending transfer back to sending institution" because of "PCU failure." ECF No. 11-4, p. 1. Tierno challenged the duration of his administrative custody placement in the PCU and the issuance of an Other Report for failure to take a cellmate. ECF No. 48, ¶ 7 (citing ECF Nos. 11, 11-10). Tierno asserts that he also "took issue with being labeled a snitch" in an 802 administrative appeal on October 21, 2021 (*see* ECF No. 54, ¶ 7), but while this administrative appeal mentioned his allegation that he had been labeled a snitch, this was not the focus of the appeal or its request for relief. *See* ECF No. 11-4.

On October 5, 2021, Tierno sent Oberlander a request slip "requesting single-cell assignment due to being labeled a snitch by an unknown individual." *Id.*, ¶ 6 (ECF No. 46-9). Tierno asserts that he also spoke directly to Oberlander "pertaining to … being labeled a snitch by Defendants Sloan, Wade, Sisble and Hetrick," but Oberlander did not reprimand these Defendants "or keep[] plaintiff safe in a single cell until he was transferred out of SCI Forest." ECF No. 54, ¶ 6 (cleaned up). Tierno elected "to commit a disciplinary infraction to seek protection." *Id.* (cleaned up). Tierno does not claim that he suffered any physical assault or physical harm as a result to being labeled a snitch.

On November 3, 2021, Tierno filed Grievance No. 950477 pursuant to DC-ADM 804, "alleging that he did not receive a response to the Request Slip and administrative custody

5

appeal" he "sent to Superintendent Oberlander." ECF No. 48, ¶ 8 (citing ECF No. 46-7). The DOC denied Grievance No. 950477 later that day "because the relief requested was satisfied as the administrative custody appeal was received and answered." *Id.*, ¶ 9 (citing ECF No. 46-7). Tierno did not appeal the DOC's response.

On November 9, 2021, he was placed back on administrative custody status for "one or more of the" reasons stated in DC-ADM 802, Section 1.B.1.[4] ECF No. 11-8. On November 11, 2021, Tierno was issued Misconduct Report No. 410442 because he refused "several direct orders" to take a cellmate, stating "I am refusing all cellies." ECF No. 11-10.

Tierno "filed seven (7) DC-ADM 804 grievances in total against SCI-Forest." ECF No. 48, ¶ 12 (citing ECF No. 46-2, ¶ 8). None of these grievances complained of being labeled a

---

[4] Under DC-ADM 802, Section 1.B.1,
> A general population inmate may be assigned AC status and placed in a Security Level (SL) housing unit, including a Psychiatric Observation Cell (POC), by order of the Shift Commander and/or by order of a psychiatrist or a Certified Registered Nurse Practitioner – Psychiatric Services (PCRNP) for the following reason(s):
> a. the inmate is in danger from some person(s) in the facility and cannot be protected by alternate measures, and/or the inmate is a danger to some person(s) in the facility and the person(s) cannot be protected by alternate measures;
> b. the inmate is a danger to himself/herself;
> c. the inmate is suspected of being involved in or is suspected of being the instigator of a disturbance;
> d. placement in general population would endanger the inmate's safety or welfare when it is not possible to protect him/her by other means;
> e. the inmate would pose an escape risk in a less secure status;
> f. the inmate has been charged with, or is under investigation for a violation of facility rules, and there is a need for increased control pending disposition of charges or completion of the investigation;
> g. the inmate has requested and been granted self-confinement;
> h. the inmate is being held temporarily for another authority. A Parole Violator (PV) or unclassified temporary transfer from another facility shall be released to general population in accordance with Subsection B.2. below;
> i. no records and/or essential information are available to determine the inmate's custody level or housing needs in accordance with Subsection B.2. below;
> j. the inmate is a capital case and has advanced to Phase 2; and/or
> k. the inmate has completed a Disciplinary Custody (DC) sanction but one or more of the above reasons exist, (or the facility has an operational need [e.g., appropriate bed space] to temporarily assign the inmate to AC status).

The Other report does not identify which of these reasons applied to Tierno. *See* ECF No. 11-8.

snitch, "retaliation, threats of harm, failure to protect, or deliberate indifference," or concerned the conduct of Sloan, Sisble, Hetrick, Wade, or Perry. *Id.*, ¶ 13 (citing ECF No. 46-2, ¶¶ 9, 10, 11).

IV. **Analysis**

Defendants assert that they are entitled to judgment as a matter of law because the record establishes that Tierno did not exhaust his administrative remedies under DC-ADM 804 for any of the constitutional claims he asserts against them. Tierno raises three arguments in response: (1) DC-ADM 802, not DC-ADM 804, is the operative policy (2) Defendants' conduct rendered DC ADM 804 unavailable to him because he "feared for his safety if he filed any grievance while in the [PCU]," and (3) Defendants waived the affirmative defense of exhaustion. The Court will address these arguments in turn.

The PLRA requires a prisoner to exhaust any available administrative remedies before commencing an action challenging the conditions of his confinement. 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all claims relating to prison life which do not implicate the duration of the prisoner's sentence. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Further, the statute requires "proper exhaustion," meaning that a prisoner's completion of the administrative review process must also satisfy the applicable procedural rules of the prison's grievance system. *Fennell v. Cambria County Prison*, 607 Fed. Appx. 145, 149 (3d Cir. 2015). A procedurally defective administrative grievance, even if pursued to final review, precludes action in federal court. *Id*. Failure to exhaust administrative remedies under the PLRA is an affirmative defense that defendants must plead and prove. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

7

### A. Tierno's claims fall within the scope of DC-ADM 804, not DC-ADM 802.

Three administrative remedy processes are available to inmates in the custody of the Pennsylvania DOC. *See McClain v. Alveriaz*, 2009 WL 3467836, at *6 (E.D. Pa. Oct. 26, 2009) (citations omitted). These policies are: (1) the Inmate Discipline Policy, DC-ADM 801; (2) the Administrative Custody policy, DC-ADM 802; and (3) the Inmate Grievance Policy, DC-ADM 804. The applicable policy depends on the subject matter of their complaint and their custody classification. *See McClain*, 2009 WL 3467836, at *6. DC-ADM 801 deals with inmate misconducts. DC-ADM 802 states, "it is the policy of the Department to place an inmate in Administrative Custody (AC) status whose presence in general population would constitute a threat to life, property, himself/herself, staff, other inmates, the public, or the secure or orderly running of the facility," DC-ADM 802 (III), and provides procedures regarding such placements, DC-ADM 802, § 1. Finally, DC-ADM 804 creates an "Inmate Grievance System" that "is intended to deal with a wide range of issues, procedures, or events that may be of concern to an inmate." DC-ADM 804, § 1.A.2. It "applies broadly to most problems, issues, or concerns of DOC inmates arising during the course of their confinement." *Cooper v. Garman*, 2024 WL 100246, at *11 (M.D. Pa. Jan. 9, 2024). But DC-ADM 804 also includes specific exclusions from the inmate grievance system, including the following:

> Issues concerning a specific inmate misconduct charge, conduct of hearing, statements written within a misconduct and/or other report, a specific disciplinary sanction, and/*or the reasons for placement in administrative custody will not be addressed through the Inmate Grievance System and must be addressed through* Department policy DC-ADM 801, "Inmate Discipline" and/or *DC-ADM 802, "Administrative Custody Procedures."* Issues other than specified above must be addressed through the Inmate Grievance System.

DC-ADM 804, § 1.A.7 (emphasis supplied).

DC-ADM 802 includes a reciprocal provision, which mandates that "[a]ll issues concerning… the duration of [an inmate's] AC custody *must be addressed* through the procedures set forth in *this procedures manual* and *may not be addressed through the procedures set forth in* Department policies DC-ADM 801, 'Inmate Discipline' or *DC-ADM 804, 'Inmate Grievance System.'*"[5]  DC-ADM 802, § 2.D.11 (emphasis supplied).  DC-ADM 802 then states that "[c]onditions or other circumstances of inmate's AC Status, other than reason or duration, must be addressed through the grievance process set forth in Department Policy DC-ADM 804." *Id*. at § 2.D.12.  Thus, DOC policies require a prisoner to follow the grievance procedures of DC-ADM 804 if the complaint is about the "[c]onditions or other circumstances of [the] inmate's AC Status," but direct him to follow DC-ADM 802 (and forbid resort to DC-ADM 804) if the complaint is about the "reason or duration" of the inmate's administrative custody status.

In this case, the parties agree that Tierno filed and exhausted two administrative custody appeals pursuant to DC-ADM 802, but he did not complete the grievance process under DC-ADM 804 for any of the claims he raises in this action, i.e., "being labeled as a snitch," "retaliation, threats of harm, failure to protect, or deliberate indifference."  ECF No. 48, ¶¶ 14, 13.  Contrary to Tierno's assertions, each of his remaining claims relates to conditions or other circumstances of his confinement; not one challenges the reason for or duration of his administrative custody.

Tierno argues that DC-ADM 802 applies to his claims because prison personnel placed him in administrative custody because Defendants labeled him a snitch.  This argument turns logic on its head.  Prison officials did not place Tierno in administrative custody because he was

---

[5] Although Defendants provided the version of the DC-ADM 802 policy that took effect in April 18, 2022, the relevant portions of the policy are identical to the previous version.  *See* DC-ADM 802, Administrative Custody Procedures Policy, issued October 31, 2016, by former Secretary John E. Wetzel.

9

called a snitch. They initially placed him in administrative custody because he claimed he expressed a potential for suicide or other self-harm. Him having been called a snitch may have precipitated or contributed to his potential for self-harm, but it was not the reason prison officials placed him or maintained him in administrative custody.

Tierno claims that Wade, Sisble, Sloan, and Hetrick violated his First Amendment rights when they "retaliated against [him] by labeling [him] a snitch for filing grievances and lawsuits against employee(s) at SCI Camphill," and violated his Eighth Amendment rights by "fail[ing] to protect [him] from serious risk of injury and/or death" after labeling him "a snitch in front of other inmate(s)" and when Sloan "threaten[ed] to harm Plaintiff" if he "report[ed] his actions." ECF No. 11, ¶¶ 42-43 (cleaned up). Tierno also claims that Perry and Oberlander violated his Eighth Amendment rights when they "allow[ed] Plaintiff to suffer the cruel and unusual punishment by COs Wade, Sisble, Sloan, Hetrick, and Perry" and "fail[ed] to take all reasonable measures to protect [him] from serious risk of injury and/or death by knowingly allowing [him] to be labeled a snitch but failing to take reasonable measures to correct [Tierno] being labeled a snitch." ECF No. 11, ¶ 43 (cleaned up).

Tierno reasons that "DC-ADM 804 does not permit any grievances to be filed pertaining to reasons of placement in (RHU) in A/C status" and, therefore, it does not apply here because "Plaintiff was in (RHU) for being labeled a snitch." ECF No. 54, ¶ 14. But Tierno's conclusion does not follow from his premise. Neither his First Amendment claim nor his Eighth Amendment claims are based on the reasons for or the duration of his administrative custody. Instead, his claims are based directly on his allegations that Wade, Sloane, Sisble, and Hetrick labeled him a snitch in front of other inmates and that other Defendants failed to appropriately address Tierno's complaints about being labeled a snitch. In fact, Tierno's single reference in his

Complaint to his placement on administrative custody status includes no discussion of the reason for or duration of this placement. Instead, the Complaint is based entirely on allegations that the Defendants' conduct subjected Tierno to retaliation and unconstitutional conditions of confinement that caused him to suffer mental and emotional, distress. Accordingly, Tierno's First and Eighth Amendment claims do not fall within the purview of DC-ADM 802.

Moreover, it is evident from the record that Defendants' alleged conduct was not the basis for Tierno's placement on administrative custody status. Pursuant to Other Report No. D561132, SCI Forest first placed Tierno on AC status on August 26, 2021, because he informed prison officials and medical staff that he did not feel safe, needed help, felt depressed, and had suicidal ideations. The next day, the PRC met with Tierno to review the Other Report. ECF No. 11-1, p. 1 (citing "DC-ADM 802 § 1.A.1.c: Inmate is a danger to himself or others"). The PRC memorialized that Tierno stated "he is very depressed and doesn't know if he can go back to the PCU." ECF No. 11-1, p. 2. After the PRC review meeting ninety days later, the PRC reported: "Tierno stated that he is stable and is ready to go back to the PCU but would like a temp Z code until he finds a [cellmate]." ECF No. 11-2. The PRC returned him to the GP PCU that day and gave him three weeks to find a cellmate. *See id.* On September 23, 2021, Tierno was again placed on AC status in accordance with Perry's Other Report No. D039872, which stated that Tierno had "requested and been granted self confinement." ECF No. 11-3. At the September 30, 2021 PRC review of Other Report No. D039872, the PRC continued Tierno "in AC status pending transfer back to sending institution" because of "PCU failure." ECF No. 11-4, p. 1. After serving an intervening period of disciplinary custody based on a misconduct, Tierno was placed back in administrative custody on November 9, 2021, for "one or more of the" reasons stated in DC-ADM 802, Section 1.B.1. ECF No. 11-8.

The record demonstrates that SCIForest placed Tierno on administrative custody status to provide him with mental health treatment and to address his security concerns. This is entirely distinct from the alleged retaliatory actions and Eighth Amendment claims he is asserting in this case. These claims fall squarely within the broad scope of matters subject to the Inmate Grievance Policy of DC-ADM 804.

### B. Tierno did not exhaust his administrative remedies under DC-ADM 804.

The operative version of DC-ADM 804 has been in effect since May 1, 2015. It provides a three-stage grievance process that inmates must follow to exhaust their administrative remedies. First, "within 15 working days after the event upon which the claim is based," the prisoner must submit a written grievance for review by the Facility Grievance Coordinator ("FGC") or the FGC's designee using the DOC's DC-804, Part 1 form. DC-ADM 804, § 1.A.8. The FGC/designee must provide an initial review response ("IRR") to the grievance to the inmate "within 15 working days from the date the grievance was entered into the Automated Inmate Grievance Tracking System." *Id*. at § 1.C.5.g. Second, if the FGC/designee has rejected the grievance or the inmate is otherwise dissatisfied with the IRR, the inmate may appeal to the prison's Facility Manager ("FM")/designee "within 15 working days from the date" the inmate receives "the initial review response/rejection." *Id*. at § 2.A.1.a, b. The FM/designee must then notify the inmate in writing "of his/her decision within 15 working days of receiving the appeal." *Id*. at § 2.A.2.d. Finally, "[a]ny inmate who is dissatisfied with the disposition of an appeal from the [FM]/designee may submit an Inmate Appeal to Final Review" to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") "within 15 working days from the date of the [FM]/designee's decision." *Id*. at § 2.B.1.b. "Only issues raised in the initial grievance and/or appealed to the [FM] may be appealed to Final Review." *Id*. "The SOIGA will ensure that … an

12

appeal to final review is responded to within 30 working days of receipt unless otherwise extended and/or referred." *Id*. at § 2.B.2.a.

In support of its motion for summary judgment, Defendants have submitted the declaration of Lisa Reeher, Superintendent Assistant at SCI Forest, in which she attests to Tierno's failure to "submit a grievance for retaliation, threats of harm, failure to protect," "deliberate indifference," and "being labeled a snitch"; or "a grievance against C.O. Sloan, C.O. Sisble, C.O. Hetrick, C.O. Wade, or Unit Manager Perry." ECF No. 46-2, ¶¶ 9, 10, 11. Reeher also attests that although Tierno "alleg[ed] that he did not receive a response to a request slip and administrative custody appeal sent to Superintendent Oberlander" in Grievance 950477, "[he] did not appeal Grievance Number 950477 past the initial response." *Id.*, ¶¶ 12, 13. Defendants have additionally submitted a table itemizing the grievances Tierno filed between December 13, 2019 and November 15, 2022 (ECF No. 46-6), and the official inmate grievance and IRR for Grievance No. 950477 (ECF No. 46-7).

Defendants have satisfied their threshold burden to produce evidence that Tierno did not exhaust his administrative remedies for the claims alleged in his Complaint. As noted above, Tierno does not dispute Reeher's summary of the seven grievances he filed concerning his incarceration at SCIForest. Instead, Tierno avers that administrative exhaustion under 804 was unavailable to him for two reasons. First, he argues that Defendants thwarted his ability to exhaust his administrative remedies. Second, Tierno argues that Defendants "waived or forfeited" this affirmative defense "for misrepresenting the matter" and "failing to raise exhaustion" in their brief in support of their motion to dismiss. ECF No. 55, p. 9.

Courts have held that "affirmative misconduct by prison officials, designed to impede or prevent an inmate's attempts to exhaust, may render administrative remedies unavailable."

*Payne v. Gordon*, 2018 WL 3649025, at *5 (M.D. Pa. Aug. 1, 2018) (citing *Todd v. Benning*, 173 Fed. Appx. 980, 982-83 (3d Cir. 2006)). If the actions of a prison official directly and affirmatively cause an inmate to procedurally default his grievance, the inmate will not be held to strict compliance with the exhaustion requirement. *See McKinney v. Guthrie*, 309 Fed. Appx. 586 (3d Cir. 2009) ("An administrative remedy may be unavailable if a prisoner is prevented by prison authorities from pursuing the prison process."). Examples of affirmative misconduct include, *inter alia*, refusing to provide appropriate grievance forms in response to an inmate's inquiry. *See, e.g.*, *Mitchell v. Horn*, 318 F3d 523, 529 (3d Cir. 2003) (exhaustion may be excused where "prison officials denied [an inmate] the necessary grievance forms and, as a result, he lacked 'available' administrative remedies."). "[O]nce the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018) (citing *Tuckel v. Grover*, 660 F.3d 1249, 1253 (10th Cir. 2011)).

      Tierno has not met his burden to demonstrate a "genuine" issue of material fact regarding his assertion that administrative remedies were unavailable to him. He asserts that "[he] was denied access to grievances while in the (PCU) by all defendants [and] feared for his safety if he filed any grievance while in PCU due to Defendants Sloan, Wade, Sisble, and Hetrick broadcasting on PCU units [he] is a snitch." ECF No. 54, ¶ 15 (cleaned up). But Tierno was moved from the PCU five days after Wade allegedly called him a snitch, on the same day that Sloan allegedly threatened him, and within two weeks of when Sloane, Sisble, and Hetrick allegedly labeled him a snitch and he complained about their conduct to Perry. And Tierno was already in the RHU on administrative custody status when he spoke with Oberlander. Because Tierno was not in the PCU before the fifteen-day window to file a grievance against any

Defendant expired, Defendants' alleged denial of grievance forms did not prevent him from grieving their conduct. Tierno's assertions are also too generalized and devoid of factual support to create a genuine issue of material fact. The Grievance Log also belies his assertions. It establishes that Tierno submitted grievances about unrelated due process, health care, and commissary matters around the time of the events alleged in his Complaint. *See* ECF No. 46-6. Tierno's successful submission of these grievances negates any plausible inference that the grievance process was unavailable to him. Tierno's contention that he was too afraid to grieve Defendants' conduct is further undermined by his assertions in his court filings that he repeatedly verbalized his concerns about the Defendants to the Defendants and other corrections officers. And his sweeping assertion that Wade, Sisble, Sloan, and Hetrick's conduct was "malicious and wanton," "intentional[ly] reckless[] or callous," and "incited inmate(s) to threaten and extort [Tierno]" is both devoid of factual specificity and belied by the record. ECF No. 54, ¶ 29.

Finally, Tierno argues that Defendants waived their exhaustion defense because they did not raise it in their motion to dismiss. Tierno correctly recognizes that a defendant can waive the affirmative defense of exhaustion. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002). However, Defendants raised this defense in their answer to his Complaint and properly presented it in their instant motion for summary judgment. *See* ECF No. 18. *See also Corliss v. Varner*, 247 Fed. Appx. 353, 354 (3d Cir. 2007). To the extent Tierno invokes the law of the case doctrine, his argument is misplaced. Pursuant to "[t]he [law of the case] doctrine[,] ... when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)) (alterations in original). But where, as here, "the legally relevant factors differ between a motion to dismiss,

which relies on plaintiff's allegations in his complaint, and a motion for summary judgment which relies on the evidence in the record," the law of the case doctrine is inapplicable. *Corliss*, 247 Fed. Appx. at 354 (citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)); *Robbins v. Wilkie*, 433 F.3d 755, 764 (10th Cir. 2006) (same)).

Because no genuine issue of material fact exists regarding Tierno's failure to exhaust his administrative remedies for his First Amendment retaliation claim and his Eighth Amendment claims, all Defendants are entitled to judgment as a matter of law.[6]

## V.  Conclusion

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 45) is GRANTED.  A separate judgment order will be entered pursuant to Fed. R. Civ. P. 58.

DATED this 10th day of April, 2024.

BY THE COURT:

_____
RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[6] The claims against the Jane/John Doe Defendants are "subject to sua sponte screening for dismissal pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A because [Tierno] is a prisoner proceeding pro se and is seeking redress from a governmental employee or entity." *Sanchez v. Coleman*, 2014 WL 7392400, at *4 (W.D. Pa. Dec. 11, 2014) (citing *Stackhouse v. Crocker*, 266 Fed. Appx. 189, 190 (3d Cir. 2008)).  See ECF No. 11.  The PLRA requires the Court to dismiss any action in which the Court determines that the action is "frivolous or malicious; fails to state a claim upon which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); *Muchler v. Greenwald*, 624 Fed. Appx. 794, 796-97 (3d Cir. 2015).  Here, Tierno has taken no action to identify the Doe Defendants, all of whom are DOC employees and presumably would be represented by the same counsel.  "Even though exhaustion is an affirmative defense, sua sponte dismissal of an action is proper where failure to exhaust available administrative remedies available to a prisoner-plaintiff is abundantly clear." *Jones v. Lorady*, 2011 WL 2461982, at *3 (M.D. Pa. June 17, 2011) (citing *McPherson v. U.S.*, 2010 WL 3446879, *3–4 (3d Cir. 2010)).  Here, the Court's entry of judgment for the named DOC Defendants based on Tierno's failure to exhaust his administrative remedies warrants sua sponte dismissal of the action against the Doe Defendants.  This defense applies equally to the Doe Defendants and has not been raised on their behalf solely because of Tierno's failure to identify, join, and serve them.  The Court also notes that "an action cannot be maintained solely against Doe defendants." *Hindes v. F.D.I.C.*, 137 F.3d 148, 155 (3d Cir. 1998) (citations omitted).